**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**SALUSTHIAN LUTAMILA**<br>**(a/k/a SALLU LUTAMILA),**<br><br>**Defendant.** | **Magistrate No.**_____<br><br>**Violation:**<br><br>**18 U.S.C. 1343 (Wire Fraud)**<br><br>**UNDER SEAL** |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Randy C. Combs, first being duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since 2010. I am currently assigned to a white collar crime squad at the FBI's Washington Field Office ("WFO"). During my employment with the FBI, I have conducted and/or assisted in numerous national security and criminal investigations, to include matters involving money laundering, bank fraud, and wire fraud in violation of Title 18 of the United States Code. I have gained experience in the conduct of such investigations through training, courses, and everyday work related to conducting these types of investigations.

2. This affidavit is being submitted in support of a criminal complaint and an arrest warrant based on probable cause to believe that SALUSTHIAN LUTAMILA has committed the offense of Wire Fraud, in violation of Title 18, United States Code, Section 1343.

3. The facts and information contained in this affidavit are based on my personal knowledge and observations, my review of records and documents obtained during this

investigation, information received from other individuals, and my experience and training as a Special Agent.

4. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## BACKGROUND AND OVERVIEW

5. Your affiant and other law enforcement personnel conducted multiple interviews and reviewed numerous documents during the course of this investigation, information from which is described more fully in the following paragraphs. Based on these interviews and the review of numerous documents, it appears that between November 2018 and January 2019, SALUSTHIAN LUTAMILA ("LUTAMILA") embezzled approximately $610,000 from the Inter-American Development Bank ("IDB") – IIC Federal Credit Union ("FCU")[1], by transferring IDB-IIC FCU funds to his personal E*TRADE account without authorization or justification.

6. The IDB-IIC FCU is located in Washington, D.C. and provides loans, checking accounts, and savings accounts, along with other services. According to their publically available website, the IDB-IIC FCU has more than 11,000 members and over $560,000,000 in assets.

7. LUTAMILA began his employment with the IDB-IIC FCU in or about November 2016. LUTAMILA's positions within IDB-IIC FCU included Controller, Director of Finance, and Acting Chief Financial Officer ("CFO").

8. In or about May 2017, LUTAMILA became Acting CFO and was provided with an executive coach and given presentation skills training, in an attempt to help LUTAMILA achieve and demonstrate the skills of a CFO. However, LUTAMILA did not show progress and his presentations did not show improvement to the level required of a CFO.

---

[1] The IDB-IIC FCU was rebranded in June 2019 as the IDB Global Federal Credit Union. For the purposes of this affidavit, IDB Global Federal Credit Union will be referred to as IDB-IIC FCU.

9. On or about August 30, 2018, an IDB-IIC FCU executive ("Person #1"), a senior executive with the credit union, informed LUTAMILA that the IDB-IIC FCU was going to look at other candidates to be the permanent CFO. Person #1 also informed LUTAMILA that there was still a place for him at the IDB-IIC FCU. LUTAMILA was asked to assist in the process of finding a new CFO for the IDB-IIC FCU. LUTAMILA participated in the hiring process for the new CFO from September 2018 to December 2018.

10. The new CFO began their employment with the IDB-IIC FCU on or about January 22, 2019, which was in the midst of the IDB-IIC FCU year-end audit. When the auditing firm conducted IDB-IIC FCU's year-end audit, it was the firm's practice to review accruals and compare those amounts to supporting documentation.

11. In or about April 2019, an IDB-IIC FCU executive ("Person #2"), a financial executive with the credit union, reviewed accruals for tax liabilities of the IDB-IIC FCU for employee tax withholdings and other tax accruals in preparation for the auditors. While conducting this review, Person #2 discovered suspicious transactions that suggested LUTAMILA was embezzling funds from the IDB-IIC FCU.

12. On or about April 11, 2019, Person #2 discovered funds from multiple internal IDB-IIC FCU accounts were being sent to another internal IDB-IIC FCU account called Acceso. The Acceso account was a dormant internal IDB-IIC FCU account that had been reactivated at the direction of LUTAMILA. Person #2 discovered that the movement of funds into the Acceso account was done under LUTAMILA's employee user name. Further examination by Person #2 revealed the money was then being disbursed from the Acceso account to an E*TRADE account. LUTAMILA had the access required to make entries and conduct account transfers, and according

to Person #2, the way the IDB-IIC FCU had its accounting and banking software set, making journal entries and the movement of money between accounts did not require dual authentication.

## PROBABLE CAUSE

13. Beginning in November 2018, a number of unauthorized transfers were conducted from IDB-IIC FCU's Acceso account to an E*TRADE account, of which LUTAMILA is the sole owner. These transactions were accomplished by transferring funds from various IDB-IIC FCU internal accounts to IDB-IIC FCU's Acceso account. Automated clearing house ("ACH") [2] transfers were then sent to LUTAMILA's E*TRADE account.

14. A review of documents obtained through this investigation showed on multiple dates between November 2018 and January 2019, LUTAMILA transferred a total of $610,000 from various IDB-IIC FCU accounts to the IDB-IIC FCU Acceso account. A further review of IDB-IIC FCU documents showed that between November 2018 and January 2019, seven ACH transfers totaling $610,000, were sent from IDB-IIC FCU's Acceso account to LUTAMILA's E*TRADE account.

15. Based on information developed through this investigation, your affiant believes LUTAMILA to have two E*TRADE accounts, one which being account number ****5074. E*TRADE account ****5074 was opened on November 8, 2018, with LUTAMILA listed as the sole owner of the account. E*TRADE account ****5074 was opened approximately one week before the first unauthorized ACH transfer from the IDB-IIC FCU Acceso account. A review of E*TRADE account ****5074 records revealed that between November 2018 and January 2019, $610,000 entered into the account, via seven ACH transfers from IDB-IIC FCU's Acceso account.

---

[2] Automated clearing house ("ACH") is a network that coordinates electronic transactions between financial institutions.

4

16. In May 2019, your affiant conducted an interview with Person #1. During the interview your affiant learned LUTAMILA did not have approval from anyone at IDB-IIC FCU to withdraw $610,000 and place the money in his personal account. Additionally, in May 2019, your affiant conducted an interview with Person #2. During this interview, Person #2 stated LUTAMILA created large intricate entries to the IDB-IIC FCU accounting system to conceal the movement of funds.

17. In September 2019, your affiant conducted a follow-up interview of Person #2. During this interview, your affiant learned the unauthorized ACH transfers from IDB-IIC FCU to E*TRADE were initiated by E*TRADE. Through a September 2019 interview of an E*TRADE executive ("Person #3"), your affiant learned that when an ACH request is originated through E*TRADE, the institution on the receiving end of the request will not see the specific E*TRADE account number associated with the request. Your affiant believes it is likely LUTAMILA initiated the ACH transfers through E*TRADE in order to conceal specific account information from the IDB-IIC FCU.

18. E*TRADE's server data center is located in a suburb of Atlanta, Georgia. Your affiant learned through a September 2019 interview with Person #3 that all electronic requests, to include originated and received ACH requests, are processed through this server data center. IDB-IIC FCU's outgoing transactions, to include ACH transfers, are processed through either the main servers in Iowa or back-up servers in Colorado.

19. A review of internet protocol ("IP") history for LUTAMILA's online access to E*TRADE showed mobile account activity on November 30, 2018 at 2:18 p.m. from an IP address resolving to IDB-IIC FCU's location in Washington, D.C. A review of LUTAMILA's E*TRADE account ****5074 records revealed the transaction date for an incoming deposit of $99,171 from

IDB-IIC FCU's Acceso account on the same date and time, November 30, 2018 at 2:18 p.m. Your affiant therefore believes that, on November 30, 2018, LUTAMILA used a mobile electronic device located in the District of Columbia to login to his E*TRADE account and initiate an ACH transfer from IDB-IIC FCU to E*TRADE, thereby causing a wire transmission to be made in interstate commerce in furtherance of a scheme and artifice to defraud.

## CONCLUSION

20. As described in this affidavit, there is reason to believe that SALUSTHIAN LUTAMILA conducted seven unauthorized transfers, between November 2018 and January 2019, from IDB-IIC FCU's Acceso account to his personal E*TRADE account, for a total of $610,000. Additionally, there is reason to believe LUTAMILA knowingly caused multiple ACH transfers to be made in interstate or foreign commerce, in furtherance of a scheme and artifice to defraud.

21. Therefore, based on the aforementioned information, your affiant believes there is probable cause that from in or about November 2018 through in or about January 2019, in the District of Columbia and elsewhere, SALUSTHIAN LUTAMILA knowingly caused multiple wire transmissions totaling approximately $610,000 to be made in interstate or foreign commerce, in furtherance of a scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1343.

22. Therefore, I respectfully request that a criminal complaint charging LUTAMILA with the crime of wire fraud be authorized and that an arrest warrant be issued.

Respectfully submitted,

_____
Randy C. Combs
Special Agent
Federal Bureau of Investigation
Department of Justice

Subscribed to and sworn to before me this \_\_\_\_\_ day of September, 2019

_____
HONORABLE ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE